UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 1:05-cv-10720-RWZ

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
WAYNE DALEY, NADINE DALEY                       *
and MDL FISHING LLC,                            *
        Plaintiffs,                             *
                                                *
                                                *
v.                                              *
                                                *
TWIN DISK, INC.,                                *
MANN ENGINES AND                                *
COMPONENTS, INC. and                            *
OCEAN YACHTS, INC.,                             *
        Defendants.                             *
                                                *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## DEFENDANT, TWIN DISC, INC.'S, MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

On or about May 15, 2006, the defendant, Twin Disc, Inc., filed a motion for summary judgment arguing, *inter alia*, that the plaintiffs' claims are barred by the applicable statute of limitations. The plaintiffs' filed an opposition on or about June 16, 2006, arguing that the claims are not beyond the statute of limitations because "many . . . promises were made after the expiration of that Twin Disc warranty." (See Plaintiffs' Opposition at p. 1). They also argue that these promises form a binding contract because they are supported by consideration in that the plaintiffs refrained from filing suit. They further argue that they are entitled to relief on a theory of promissory estoppel, a theory never before asserted by the plaintiffs. This reply memorandum is filed to address the following problems with the plaintiffs' opposition: 1) the plaintiff testified

at his May 3, 2006, deposition that Twin Disc did not make any such promises, 2) the correspondence cited to by the plaintiffs as evidencing the alleged consideration is not addressed to this defendant nor does it support a conclusion that the plaintiffs forewent filing suit in exchange for any alleged promises, and 3) the plaintiffs' complaint does not seek recovery on the basis of promissory estoppel.

The plaintiffs' entire opposition with respect to the statute limitations issue concerning its breach of contract claim is premised upon the idea that Twin Disc made promises to the plaintiffs beyond the applicable warranty period and that those promises were separate and apart from the warranty provided by Twin Disc. (See Plaintiffs' Opposition at pp. 3, 4, 5). On May 3, 2006, the plaintiff appeared pursuant to a Notice of Deposition and provided testimony under oath.[1] At the deposition, counsel for Twin Disc asked the following question: "Focusing on the fall of 2000 and the work that Twin Disc did on the transmissions, what promises, if any, were made to you in that time period?" (See Deposition of Wayne Daley, attached hereto as Exhibit A, at 212:16-19). The plaintiff answered: "There wasn't any promises at that time." (Exhibit A, at 213:1-2). The plaintiff was further asked about his understanding as to the work performed by Twin Disc, and he responded that he believed said work was done because he had a warranty with Twin Disc. (Exhibit A, at 213:3-8). He was asked the same questions with respect to the work performed in 2002, in response to which he also denied that Twin Disc made any such promises and he stated that he understood that the work was being done at no cost to him and under the warranty he had with Twin Disc. (Exhibit 1, at 230:16-24, 231:1-24, 232:1-3, 242:1-18). The

---

[1] Twin Disc's Motion for Summary Judgment was already prepared for filing at this time and the transcript of the deposition testimony was not received until after the motion was filed.

2

plaintiffs' reliance on *Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197, 201 (2004), is therefore misplaced as Twin Disc made clear and the plaintiffs understood that the work performed was in fact a warranty remedy. Consequently, the plaintiffs' theory as articulated in their opposition fails based upon the plaintiff's own testimony.

The plaintiffs next claim the alleged promises to repair are contractually binding because they were supported by consideration, namely the plaintiffs' purported forbearance on their legal claims. (See Plaintiffs' Opposition at pp. 4-5). As noted by the plaintiffs, abandonment of a claim *can* constitute valid consideration for a contract. *See Neuhoff*, 370 F.3d at 202. However, as in *Neuhoff*, no promises were made by Twin Disc to induce the plaintiffs to forego filing a claim against it. *See id.* The *Neuhoff* court was very clear that absent a showing that the promise was made to induce the party to forebear, there is no consideration. *See id.* In that vein, the *Neufhoff* decision is directly on point with respect to the facts of this case. The letters attached to the plaintiffs' opposition do not support a finding that the plaintiffs agreed to forego filing suit in exchange for repair work. (See Exhibit A to Plaintiff's Opposition). More importantly, none of the relevant letters raising the specter of litigation are even addressed to Twin Disc. Therefore, there is absolutely no support to the plaintiffs' claim that they agreed to forego filing suit in reliance upon any representations made by Twin Disc. Additionally, the time Mr. Daley spent assisting the defendants with the various repair work also fails to form the basis for consideration because as in *Neuhoff*, Mr. Daley's actions were not taken in reliance upon any of the alleged promises to solve the vibrations. *See id.* Rather, they were actions he would have taken anyway. *See id.*

Finally, the plaintiffs claim that their "promissory estoppel" claims "would survive

3

regardless." (See Plaintiff's Opposition at p. 5). The problem with this argument is two-fold. First, the plaintiffs have not asserted any claims for promissory estoppel nor have they pursued relief under such a theory. (See Exhibit A to Twin Disc's Statement of Undisputed Material Facts). Consequently, they cannot now claim that such claims survive as they never existed in the first place. Second, as discussed above, the evidence refutes the existence of any such promises or any reliance by the plaintiffs on such promises.[2] Therefore, even if the plaintiffs sought recovery under a theory of promissory estoppel, they could not meet the requirements necessary to support such a claim. (See Plaintiffs' Opposition at p. 5).

For the foregoing reasons, and for the reasons set forth in the original memorandum in support of its motion for summary judgment, the defendant, Twin Disc, Inc., respectfully requests that its motion for summary judgment be ALLOWED, and that summary judgment enter in its favor on the plaintiffs' amended complaint.

---

[2] The plaintiffs also mistakenly rely upon correspondence and discussions with the other defendants in responding to Twin Disc's arguments. Such evidence is not binding as to Twin Disc. (See Exhibit A to Plaintiff's Opposition). The plaintiffs mistakenly refer to discussions occurring in 2004. However, the undisputed evidence referred to by the plaintiffs is not relevant to Twin Disc. In fact, prior to the initiation of this lawsuit, discussions with Twin Disc ended in 2002.

The Defendant,
Twin Disc, Inc.,
By its counsel,

/s/ Megan E. Kures

---

Richard J. Shea BBO #456310
Megan E. Kures BBO #652485
MELICK, PORTER & SHEA, LLP
28 State Street - 22nd floor
Boston, MA 02109
(617) 523-6200

Dated: June 23, 2006

Wayne Daley

1

1          Volume: I
2          Pages: 1-259
3          Exhibits: 1-14
4     UNITED STATES DISTRICT COURT
5      DISTRICT OF MASSACHUSETTS
6    Civil Action No. 05-CV-10720 RWZ
7  - - - - - - - - - - - - - - - - - - -
8  WAYNE DALEY, NADINE DALEY and MDL
9  FISHING, LLC,
10          Plaintiffs,
11     v.
12 TWIN DISC, INC., MAN ENGINES & COMPONENTS, INC.,
13 OCEAN YACHTS, INC. and PERFORMANCE
14 DIESEL, INC.,
15          Defendants.
16 - - - - - - - - - - - - - - - - - - -
17      Deposition of Wayne Daley
18          May 3, 2006
19      10:16 a.m. - 4:31 p.m.
20  Hermes, Netburn, O'Connor & Spearing, P.C.
21         265 Franklin Street
22        Boston, Massachusetts
23
24   Reporter: Daria L. Romano, RPR/CRR

Wayne Daley

212

1  Q.  Now, with respect to the rebuilding of
2  the transmissions, you didn't pay for any of
3  that; is that correct?
4  A.  That's correct.
5  Q.  I'm talking about, again, just the
6  fall of 2000.
7      And was it your understanding that the
8  work was done under warranty?
9  A.  Yes.
10  Q.  You never received a bill for that
11  work?
12  A.  No.
13  Q.  Okay.  Now, part of your claim in this
14  case is that promises were made to you about
15  certain repairs.
16      Focusing just on the fall of 2000 and
17  the work that Twin Disc did on the
18  transmissions, what promises, if any, were made
19  to you in that time period?
20      MR. CRIMMINS:  From ownership to
21  fall of 2000?
22      MS. KURES:  Just in the fall of
23  2000.
24      MR. CRIMMINS:  Okay.

213

1    A.    There wasn't any promises at that
2  time.
3    Q.    And when Twin Disc told you that it
4  would undertake the work to rebuild the
5  transmissions in the fall of 2000, was it your
6  understanding that that work was being done
7  because they had a warranty with you?
8    A.    Yes.
9    Q.    Now, going back to Exhibit A on your
10 answers to interrogatories, which is Exhibit
11 Number 2 for our purposes.
12        Can you flip over to page two and
13 looking specifically at the date of November 10
14 of 2000?
15   A.    Mm-hmm.
16   Q.    Going down to the third line, there's
17 a reference to "transmissions okay but bad
18 vibration."
19   A.    Correct.
20   Q.    When you state "transmissions okay,"
21 is there something in particular that you're
22 referring to there?
23   A.    That they worked.
24   Q.    That previously the transmissions

230

1  that correct?
2       A.    Yes.
3       Q.    And do you know whether when they
4  pulled your transmissions out and tested them
5  whether they found anything wrong with them?
6       A.    There was metal in them, there was
7  another bad bearing, and something else that I
8  don't remember.
9       Q.    And they rebuilt your transmissions
10 then a second time?
11      A.    As far as I know, yes.
12      Q.    Now, did you have to pay anything for
13 the vibrational analysis that Twin Disc did in
14 late 2001?
15      A.    No.
16      Q.    How about when they rebuilt your
17 transmissions the second time in 2002?
18           MR. CRIMMINS:  Objection.
19           Go ahead.
20      A.    Twin Disc sent their new dealer out of
21 New Hampshire, North Atlantic Power, I believe.
22 They sent a gentleman by the name of Lee
23 Gillespie down.  They sent him down at first.
24 He was the one that found the metal in the

Wayne Daley

231

1   transmissions. They sent him down to remove the
2   transmissions.
3        He came all the way from New
4   Hampshire, if I remember right, without the
5   equipment to jack the transmissions up.
6        But anyways, when they all got done,
7   they told me that the oil in the transmissions
8   should be changed again because of all that
9   metal that was through it. So I asked them to
10  come back down, and they came back down, and
11  they charged me for that, and I paid that.
12       Q.   They charged you for the oil change?
13       A.   Yes.
14       Q.   Do you know how much that was?
15       A.   I don't remember.
16       Q.   Insofar as the actual rebuilding of
17  the transmissions, were you charged for that?
18       A.   No.
19       Q.   Was it your understanding that that
20  was done under a warranty?
21       A.   Yes.
22       Q.   Did you have any conversations with
23  anybody at Twin Disc with respect to this second
24  rebuilding of the transmissions wherein they

Wayne Daley

232

1  told you that that would solve the vibration
2  problem?
3      A.   No.
4      Q.   Do you know whether the metal that was
5  found in the transmissions, has anybody told you
6  that that metal in the transmissions caused
7  vibration?
8      A.   No.
9      Q.   Did the vibration improve to any
10 degree after the transmissions were rebuilt the
11 second time?
12     A.   No.
13     Q.   Now, when the transmissions were
14 rebuilt the second time, were new couplers put
15 on, or were the old ones put back on again?  And
16 this is, again, in 2002.
17     A.   There was a long discussion between
18 PDI, myself, Ocean Yachts, Twin Disc about the
19 first coupler that was in it and the Vulcans
20 that were in it.  That was the second coupler.
21          PDI told me they verified that the
22 Vulcan was the right one for that package.  And
23 I suggested that what if there's a problem with
24 these Vulcan in the way they were manufactured,

Wayne Daley

242

```
 1      Q.   But did they tell you that they were
 2   going to solve your problems?  I understand that
 3   that may have been what they were there for.
 4      A.   I don't recall.
 5      Q.   As we sit here today, do you have any
 6   knowledge that the vibrations are coming from
 7   the transmissions?
 8      A.   No.
 9      Q.   Would you agree with me that Twin Disc
10   wouldn't be responsible for solving your problem
11   if the vibrations were coming from somewhere
12   other than the transmissions?
13           MR. CRIMMINS:  Objection.
14           You can answer.
15      A.   Yes.
16      Q.   You would agree with me to that
17   statement, correct?
18      A.   Mm-hmm.
19      Q.   Have you had any work done on the
20   transmissions since they were rebuilt in the
21   spring of 2002?
22      A.   Major work, no.
23      Q.   What about minor work?
24      A.   Oil changes.
```