UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION 05-10720-RWZ

WAYNE DALEY, et al.

v.

TWIN DISC, INC., et al.

MEMORANDUM OF DECISION

July 31, 2006

ZOBEL, D.J.

In July 1999, plaintiffs Wayne Daley and Nadine Daley ("the Daleys") purchased a yacht made by defendant Ocean Yachts, Inc. ("Ocean") and equipped the yacht with diesel engines made by defendant MAN Engines and Components, Inc. ("MAN").[1] Within approximately one year, the Daleys began experiencing problems with the yacht, including black smoke and soot in the transom and the interior of the yacht. The yacht and its parts were covered by various warranties from Ocean, MAN, and defendant Twin Disc, Inc. ("Twin"), the manufacturer of the transmission. Twin's warranty provided coverage for 24 months from the date of shipment, or 12 months from the date the transmission went into service, whichever occurred first. (Twin's Ex. D, ¶ 6.4(A)). Beginning in the fall of 2000 and continuing through the summer of 2003, MAN, Twin, Ocean, and defendant Performance Diesel, Inc. ("Performance") attempted on numerous occasions to fix the yacht. Twin performed work on the yacht in the fall of

---

[1] Although the caption lists "Mann Engines and Components, Inc." as a defendant, it is clear from the summary judgment record that the defendant is "MAN Engines and Components, Inc."

2000 and the spring of 2002. Plaintiffs allege that on each occasion, defendants assured the Daleys that the repair would solve the existing problems. In fact, after each repair, the problems worsened, and additional problems—including intense vibrations that caused structural damage to the yacht—arose. In March 2005, plaintiffs sued defendants for breach of contract in state court. Defendants removed the action to federal court, and plaintiffs eventually amended the complaint to add a claim under M.G.L. c. 93A. Currently pending are Ocean's motion to dismiss Count II, and Twin's motion for summary judgment on both counts.

I.      Count I: Breach of Contract

Count I asserts breach of the promises defendants allegedly made "that each of the repairs that they claim[ed] they would undertake would solve the problems that the Daley's [sic] were experiencing with their yacht." (Am. Compl. ¶ 18). Twin moves for summary judgment on grounds that (1) plaintiff's claim is properly for breach of warranty rather than breach of a promise to repair; (2) any claim for breach of the warranty accrued in 1999, at the time of delivery, or at least by the summer of 2000, when plaintiffs knew of the alleged defects; and (3) under the four-year statute of limitations applicable to breach of warranty actions in Massachusetts, the claim—which was filed in January 2005—is barred. Summary judgment under Fed. R. Civ. P. 56 is warranted if—viewing the evidence in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor—no genuine issue of material fact remains. See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994).

In support of its assertion that plaintiffs may sue only for breach of warranty, Twin relies primarily on New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25 (1985). In that case, New England Power ("NEP") purchased two boilers from Riley. Id. at 26. Defects quickly materialized, and for several years, Riley tried to repair the boilers, but to no avail. Id. NEP eventually sued the defendant for both breach of warranty and breach "of promises to repair." Id. The warranties for both boilers contained clauses in which Riley promised to repair any defects in the boilers for a period of one year. Id. at 30. NEP argued that this language constituted a separate promise to repair, but the court disagreed, noting that "promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty." Id. In such cases, where "there are a warranty and a promise to repair," the court found that "the remedy of first resort is the promise to repair," and if that promise "is not fulfilled, then the cause of action is the underlying breach of warranty." Id. In this case, as in New England Power, the warranty contains a promise to repair. (Twin's Ex. D). And Twin asserts that all of the work it performed was pursuant to these warranties. (Twin's Loc. R. 56.1 Statement ¶¶ 10, 19). Therefore, Twin argues, "plaintiffs' breach of promise to repair claims are actually . . . breach of warranty claims." (Twin's Mem. in Supp. of Mot. to Dismiss 4).

Plaintiffs disagree that the work was performed under the warranty and dispute the applicability of New England Power, relying instead on Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197 (1st Cir. 2004). In that case, the Neuhoffs had purchased windows in 1991 manufactured by Marvin. Id. at 200. Within a few years, the windows

began to decay.  Id.  It took awhile for Marvin to learn of the problems, but eventually it did, and in 1998—seven years after the purchase—Marvin sent the Neuhoffs a letter promising to replace the windows for free.  Id.  Some of the replacements were completed in 1999, but not all.  Id.  In 2001, Marvin informed the Neuhoffs that the remaining windows would not be replaced for free, but could instead be purchased at a discount.  Id.  The Court of Appeals concluded that Marvin's "promise to repair . . . was not a part of the original contract or warranty in effect," since according to Marvin itself "the original contract warranty had expired and the ten year warranty was inapplicable." Id. at 201.   Accordingly, "the promise to repair was independent of the warranties and could, therefore, be breached."  Id.

Plaintiffs argue that Count I falls more within the ambit of Neuhoff than New England Power because Twin allegedly "made promises to repair and efforts to repair as late as 2002, well after the warranty expired."  To support their contention that these promises were independent of the warranty, plaintiffs point out that Twin's warranty had definitely expired by 2002 and, assuming a 12-month limitation, had even expired before the fall of 2000.  Even assuming that the warranty had expired before Twin performed any work, however, the record simply does not indicate that any promises were made by Twin at that time.  Indeed, at his deposition, Wayne Daley himself unequivocally stated that Twin's work—in both 2000 and 20002—was done "under warranty" and at no cost to himself.  (Ex. A to Def.'s Reply Mem., at 212, 231).  More importantly, Mr. Daley denied that anyone from Twin made any promises to him about the repairs on either occasion.  (Id. at 212-13, 231-32, 242).  Although on Twin's motion

4

I view the evidence in the light most favorable to plaintiffs, no reasonable juror could find on this record that Twin made promises to repair that were independent of the warranty or that plaintiffs ever perceived that such promises had been made. To the extent that Count I is premised on the existence of such independent promises, it thus fails.

In any event, even if Twin had made independent promises to repair, such promises would be unenforceable for lack of consideration. See Neuhoff, 370 F.3d at 201. Plaintiffs allege that they forbore litigation, but have provided no evidence in support. None of the correspondence addressed to Twin mentions the possibility of litigation, let alone a promise to forbear. Nor does the record suggest that any promise Twin allegedly made was "given to induce [plaintiffs] to relinquish a claim against [Twin]." Id. As for plaintiffs' contention that the time and labor they spent assisting Twin was consideration, it too lacks evidentiary support. Mr. Daley asserts that he was "required" to be present at "many of the repairs" and at all of the sea trials, but does not state if Twin in particular required his attendance. Cf. id. (where plaintiffs asserted consideration in form of time and labor expended assisting defendant in repairs, court found no consideration where "record contains scant evidence indicating any time or labor expended"). Count I thus fails because no record evidence supports the existence of independent promises to repair and because such promises would in any event be unenforceable due to lack of consideration.

Moreover, even if I treat Count I as a claim for breach of warranty, as defendant urges, the claim is barred by the statute of limitations. See M.G.L. c. 106, § 2-725

(four-year statute of limitations for breach of warranty claims).  Twin contends that the action accrued either on the date of delivery in 1999, or at the latest, in the summer of 2000, by which time plaintiffs knew of the alleged defects, and that plaintiffs' claim, filed in January 2005, was therefore untimely.  Plaintiffs have offered no opposition to this argument, presumably because they refuse to see the claim as one for breach of warranty.  Twin's characterization of the facts is supported by the record.  Moreover, even though repairs continued until 2003, the claim nevertheless accrued in 1999 or 2000 because defendants' repeated efforts to repair did not toll the running of the statute of limitations.  See New England Power Co., 20 Mass. App. Ct. at 31-32.  And in the absence of any evidence that Twin purposely prolonged the time for repairs beyond the statute of limitations, plaintiffs may not argue that Twin is estopped from relying on the statute of limitations.  See id. at 32.  Accordingly, to the extent Count I is viewed as a claim for breach of warranty, it is barred by the statute of limitations.

Plaintiffs, perhaps sensing the vulnerability of Count I, argue in their opposition that whatever the viability of their contract claim, their "promissory estoppel claims would survive regardless."  (Pls.' Opp. 5).  Promissory estoppel is nowhere asserted as a basis for recovery in the amended complaint.  Nor, as explained above, does the record support plaintiffs' assertion that, in reliance on Twin's promises, plaintiffs "refrained from bringing litigation."  (Id. at 6).  Therefore, Count I for breach of warranty is barred by the statute of limitations.

II.     Count II: M.G.L. c. 93A

Ocean moves to dismiss Count II and Twin seeks summary judgment.  When deciding a motion to dismiss, I accept all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of plaintiffs.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005).  Dismissal is appropriate only if the pleadings show that plaintiffs can prove no set of factual allegations consistent with the complaint under which they would be entitled to relief. Id. at 6.

"Chapter 93A creates two causes of action, one for 'persons engaged in trade or commerce,' see M.G.L. c. 93A § 11 , and another for all other persons, see id. § 9." Boos v. Abbott Labs., 925 F. Supp. 49, 55 (D. Mass. 1996).  The jurisdictional prerequisites of the two causes of action are distinct.  Section 11 is available to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act."  Thus, the Massachusetts Supreme Judicial Court has held that § 11 actions must arise out of a "commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce."  Szalla v. Locke, 421 Mass. 448, 451 (1995).  In addition, § 11 actions may be based only upon conduct occurring "primarily and substantially" within the Commonwealth.  Neither of these limitations, however, apply to actions brought under § 9, which is available to any person "injured by another's use or employment of any method, act or practice declared to be unlawful

by section two." See Boos, 925 F. Supp. at 55 (internal quotation marks omitted). All plaintiffs have sued under both sections. Dismissal is appropriate on several grounds.

First, with respect to MDL Fishing LLC ("MDL"), it is mentioned only in paragraph 2 of the amended complaint, which identifies it as a Massachusetts limited liability corporation with a principal place of business in Canton, Massachusetts. (Am. Compl. ¶ 2). No other factual allegations concerning MDL appear anywhere in the amended complaint, according to which only the Daleys were involved in (1) the purchase of the yacht, (2) the selection of the engines, (3) the problems with the yacht, (4) the complaints to defendants,[2] and (5) the alleged representations made by defendants. MDL cannot sustain a claim under either § 9 or § 11 where the complaint fails to allege any facts concerning its involvement in the underlying events. At the very least, the complaint clearly fails to allege that MDL suffered injury while engaged in trade or commerce as a result of a commercial transaction with defendants and thus fails to state an actionable claim under M.G.L. c. 93A, § 11. For the same reason, the Daleys' § 11 claim is insufficient; they too fail to allege that they were injured in a commercial transaction while engaged in trade or commerce. In fact, the complaint expressly states that "[a]s a result of the defendants' actions, the Daley's [sic] have been substantially damaged, including but not limited to . . . time away from their businesses." (Am. Compl. ¶ 16). Accordingly, plaintiffs' claims under M.G.L. c. 93A, § 11 are dismissed.

---

[2]None of the correspondence documenting plaintiffs' complaints to defendants mention MDL. All correspondence is either to or from Mr. Daley, and a few of Mr. Daley's letters also mention his wife.

In any event, dismissal of the entire Count is appropriate because the complaint does not set forth allegations rising to the level of a 93A violation. Plaintiffs assert that defendants made certain representations to the Daleys when they purchased the yacht, that the yacht subsequently had problems, that the defendant repeatedly tried to fix the yacht and repeatedly made representations that were ultimately proven false. "In some cases the facts giving rise to a breach of contract claim will also give rise to a 93A claim," but only in cases involving some level of bad faith. Ecological Fibers, Inc. v. Kappa Graphic Bd., B.V., 345 F. Supp. 2d 13, 15 (D. Mass. 2004). Chapter 93A encompasses only misconduct that rises to a "level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." See Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1514 (1st Cir. 1989) (internal quotation marks omitted). In this case, plaintiffs accuse defendants of making representations that turned out to be false, but they have nowhere charged defendants with willfully deceiving them, of deliberately misrepresenting the efficacy of the repairs they undertook, or even of intending to breach the contract. Cf. Ecological Fibers, 345 F. Supp. 2d at 16 (complaint stated 93A claim where plaintiff alleged that defendant never intended to perform and later fraudulently terminated the contract). Rather than giving rise to an inference of "unethical, immoral, oppressive, or unscrupulous" behavior, Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 505 (1997), the complaint instead indicates only that defendants attempted to comply with the contract by performing the repairs, but ultimately failed. The summary judgment record only confirms this impression, as it shows that defendants tried repeatedly and at

considerable expense to fix the yacht's problems. In the absence of any allegation that defendant acted fraudulently or unfairly, no 93A claim lies under either § 9 or § 11. See Duclersaint v. Fed. Nat'l Mortgage Ass'n, 427 Mass. 809, 814 (1998) (no 93A violation under either § 9 or § 11 where nothing in record indicated that defendant had acted unfairly).

On this ground, Count II is properly dismissed in its entirety, though MAN and Performance have not joined their co-defendants' motions. In appropriate circumstances, a district court may dismiss a claim sua sponte. See Diaz v. Stathis, 440 F. Supp. 634, 637 (D. Mass. 1977), aff'd 576 F.2d 9 (1st Cir. 1978). In particular, "where presented with a motion to dismiss filed by some of the defendants to an action, the court . . . may consider the sufficiency of the complaint as against all defendants." Id. Plaintiffs, who have received adequate notice of and an opportunity to respond to both Ocean's and Twin's motions, suffer no prejudice. Id. Therefore, because the grounds for dismissal set forth above apply to all defendants, Count II is dismissed as to all. See also Snyder v. Talbot, 836 F. Supp. 26, 30 (D. Me. 1993); Papas v. Baines, 981 F.2d 1245 (1st Cir. 1992) (table) (affirming dismissal of complaint as to all defendants even before all defendants had been served).

Accordingly, all that remains of the case is Count I against Ocean, MAN and Performance, who have filed no dispositive motions pertaining to that count. Because the evidence submitted by Twin concerns only its own warranties and interactions with plaintiffs, the record does not support an analysis of plaintiffs' claim of breach as against the other defendants.

III.      <u>Conclusion</u>

Twin's Motion for Summary Judgment (Docket #44) is allowed.

Ocean's Motion to Dismiss Count II (#39) is allowed, and Count II is dismissed in its entirety.

Twin's Request for Leave to File a Reply (#48) is allowed.

| 07/31/06 | /s/ Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |