UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| WAYNE DALEY, NADINE DALEY, | ) |
| and MDL FISHING LLC, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )   Civil action No.: 05-CV-10720-RWZ |
| | ) |
| TWIN DISC, INC., MAN ENGINES | ) |
| AND COMPONENTS, INC., OCEAN | ) |
| YACHTS, INC., and PERFORMANCE | ) |
| DIESEL, INC., | ) |
|     Defendants. | ) |

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OCEAN YACHTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs, Wayne Daley, Nadine Daley, and MDL Fishing LLC filed a two count amended complaint against Twin Disc, Inc. ("Twin"), Man Engines and Components, Inc. ("Man"), Ocean Yachts, Inc. ("Ocean Yachts") and Performance Diesel, Inc. ("Performance"). Count I is for breach of contract against all Defendants with respect to alleged vibration problems with the boat and alleged promises to repair it. Count II is for breach of Mass.Gen.Laws, c.93A against all defendants. On or about July 31, 2006, the Court granted Twin 's Motion For Summary Judgment with regard to Count I and granted Ocean Yachts' Motion to Dismiss Count II . The Court entered judgment in Twin's favor on Count I, dismissed Count II against Ocean Yachts and *sua sponte* dismissed count II against all Defendants.

Thus the only remaining claim before this Court is the cause of action styled as a breach of contract against Ocean Yachts, Man Engines, and Performance Diesel. Although Count I is styled a

1

breach of contract or a breach of a "promise to repair," Plaintiffs have not alleged the existence of any *independent* agreements to repair the yacht apart from an underlying express warranty issued by Ocean Yachts.  As all Plaintiffs have really alleged is a breach of an express warranty, Ocean Yachts is entitled to summary judgment in its favor because: (1) the statute of limitations has run on the breach of warranty claim, having expired in or about July of 2003; (2) to the extent Plaintiffs have testified that MDL Fishing LLC owns and uses the boat for commercial purposes, Plaintiffs have voided any warranty; (3) Ocean Yachts' written "5&1 Warranty" expressly disclaims any and all liability for parts or components not manufactured by Ocean Yachts, Inc.; (4) the express warranty also disclaims all liability for consequential and incidental damages;[1] (5) the individual defendants have no standing to file this claim; and (6) Ocean Yachts has fulfilled its warranty obligations by repairing all items covered by the warranty.

<u>**STANDARD FOR SUMMARY JUDGMENT**</u>

Summary judgment under Fed.R.Civ.P. 56 is warranted if, after viewing the evidence in a light most favorable to plaintiffs and drawing reasonable inferences in their favor, no genuine issue of material fact remains.  *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 684 (1st Cir.1994).  Additionally,  Fed.R.Civ.P. 56(b) provides: "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

<u>**MATERIAL FACTS NOT IN DISPUTE**</u>

As set forth in Ocean Yachts' statement pursuant to local rule 56.1 filed herewith, Ocean

_____

[1]  Plaintiffs have no claim for actual damages as they did not pay for any repairs to the yacht.

2

Yachts is entitled to summary judgment on count I because the following material facts are undisputed.

1.    The Ocean 48 Yacht at issue in this case was purchased by Plaintiff MDL Fishing LLC in July 1999 from Oyster Harbor Marine, an independent yacht dealer.  *See,* Affidavit of Wayne Daley, ¶1.

2.    The boat sold to the Daleys was covered by a written  5&1 Warranty, extended by Ocean Yachts to all new boats sold to consumer purchasers.  *See,* 5&1 Warranty, attached hereto as exhibit B.

3.    The warranty registration card was signed by Plaintiffs on July 1, 1999.  *See,* Deposition of Wayne Daley, p. 110, ln. 4-10, attached hereto as composite exhibit A; *see also,* exhibit C.

4.    The warranty period is for one year following the initial retail purchase of the boat. *See,* 5&1 Warranty, attached hereto as exhibit B.

5.    The 5&1 Warranty contains the following provision:  "Ocean Yachts, Inc. will, within a reasonable time after notification as provided within this limited warranty, exercise at its option to repair or replace a boat hull or associated equipment which shall, within the limited warranty period, be determined to have been defective in material or workmanship as stated in the respective hull and associated equipment warranties."  *See,* 5&1 Warranty, attached hereto as exhibit B.

6.    Ocean Yachts' Warranty only covers parts and materials manufactured by Ocean.  It does not cover parts manufactured by third parties, including the engines, transmission, or engine couplings, which may be at issue in this case.  *See,* 5&1 Warranty, attached hereto as exhibit B.

7.    The 5&1 Warranty contains a term voiding any warranties if the boat is used for commercial or charter purposes.  *See,* 5&1 Warranty, attached hereto as exhibit B.

3

8.      MDL Fishing LLC is the registered owner of the boat.  *See,* Deposition of Wayne Daley, p. 112, ln. 15-17, attached hereto as composite exhibit A.  This is supported by the registration of the boat filed with the Coast Guard.  See, exhibit "6" to the Deposition of Wayne Daley.

9.      "Within approximately one year following the purchase, I experienced problems with the yacht including but not limited to black smoke and soot in the transom and interior of the yacht, failure of torsion couplings, hub notching, and wear of aluminum clutch pistons."  *See,* Affidavit of Wayne Daley, ¶2.  These issues were repaired.

10.     There was no vibration problem with the boat until after the new couplings were installed more than one year after the boat was purchased.  *See,* Deposition of Wayne Daley, p. 62, ln. 19-21, p. 66, ln. 13-19, attached hereto as composite exhibit A.

11.     The engine, engine transmission and the couplings are not manufactured by Ocean Yachts.

12.     In the complaint, there are six alleged promises to repair the yacht which form the basis of their "promise to repair claims."   The "promises" are in reality  repairs made to the boat, including: (a) in October-November of 2000 Man and Twin rebuilt the transmission and added new couplers; (b) in May and June of 2001 Ocean Yachts and Man installed new injector pumps; (c) in November of 2001 Ocean Yachts performed a new alignment; (d) in February and March 2002 Man replaced couplers and performed other transmission work; (e) in summer of 2003 Ocean Yachts and Man  replaced injector pumps; and (f) in 2000 and 2002 Twin worked on the transmission and

transmission couplers.[2] *See,* amended complaint, ¶ 14.

13.    It is undisputed that all of the above "promises to repair" arose from existing warranty obligations at no additional cost to the Daleys or MDL Fishing:

14.    The attempt to correct the problem with excessive soot was performed under Man's warranty at no additional cost to the Daleys or MDL Fishing.  *See,* Deposition of Wayne Daley, p. 119, ln.18-19, attached hereto as composite exhibit A.  The same is true of the exhaust gaskets which were changed out under Man's warranty.  *See,* Deposition of Wayne Daley, p. 121, ln. 5-10, attached hereto as composite exhibit A.

15.    At his deposition, and despite his allegations in the amended complaint, Mr. Daley testified that Ocean Yachts was not the party which installed the new injector pumps.  *See,* Deposition of Wayne Daley, p. 130, ln. 23-24, attached hereto as composite exhibit A.   Moreover, Mr. Daley testified that the only engine work that Ocean Yachts performed was on the engine mounts and that Ocean Yachts paid for these repairs.  *See,* Deposition of Wayne Daley P. 123, ln. 1-10, attached hereto as composite exhibit A.

16.    The alignment referred to above was done by Ocean Yachts at no cost to Daleys. *See,* Deposition of Wayne Daley, p. 132, ln. 11-14, attached hereto as composite exhibit A.

17.    Further, and again despite his allegations in the amended complaint, Mr. Daley testified that Ocean Yachts never performed work on the engines, transmissions or couplings. *See,*

_____

[2]  Ocean Yachts did not perform any work in items (b) or (e) on the engine and did not replace the injector pumps.  All this work was performed by Man, the engine manufacturer.  Man issues its own warranty.

Deposition of Wayne Daley, p. 131, ln. 15-19, attached hereto as composite exhibit A.

18.    At his deposition, Mr. Daley also testified that Ocean Yachts did not replace the injector pumps.  *See,* Deposition of Wayne Daley, p. 134, ln. 11, attached hereto as composite exhibit A.

19.    No consideration was paid to bind any separate agreement in January of 2003. *See,* Deposition of Wayne Daley, p. 125, ln. 12-24, p.126, ln. 1, attached hereto as composite exhibit A.

20.    Mr. Daley believes Ocean Yachts is required to fix any and all problems with the boat no matter when they arise.  *See,* Deposition of Wayne Daley, p. 159, ln. 2-5, attached hereto as composite exhibit A.

21.    The Daley's filed this action in state court in March 2005, and it was removed to this court by the Defendants.

## ARGUMENT

## OCEAN YACHTS IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I

The only substantive allegation for the breach of contract claim is contained in paragraph twenty-one of the amended complaint.  "The defendants breached their agreements with the plaintiffs by failing to make repairs as promised, causing further damage to the yacht and by misrepresenting that future repairs would solve the new problems." *See,* amended complaint, ¶ 21.

Ocean Yachts is entitled to summary judgment because (1) Plaintiffs have not alleged any *independent* promise or contract to perform repairs apart from the underlying express warranty; (2) the statute of limitations has run on the breach of warranty claim, (3) to the extent Plaintiffs have testified that MDL Fishing LLC owns and uses the boat for commercial purposes, Plaintiffs have voided any potential warranty covering the boat; (4)  the 5&1 Warranty expressly disclaims any and all liability for parts or components not manufactured by Ocean Yachts, Inc.;  (5) the express

6

warranty also disclaims all liability for consequential and incidental damages; and (6) the individual defendants have no standing to file this claim.

As will be discussed *infra*, the breach of contract claim (or rather "breach of promise to repair"), is actually poorly-disguised claim for breach of warranty. Even if this Court treats these alleged breaches of promises to repair as a breach of contract, the cause of action still must fail because Ocean Yachts sold the boat to an independent third-party dealer (Oyster Harbors Marine), who in turn sold the boat to MDL Fishing LLC. Wayne Daley testified that MDL Fishing LLC is the registered owner of the boat.

Q.  Who is the registered owner of the boat?

A.  MDL Fishing.

*See,* Deposition of Wayne Daley, p. 112, lines 15-17, attached hereto as composite exhibit A. This is supported by the registration of the boat filed with the Coast Guard, attached hereto as exhibit E.

Accordingly, Ocean Yachts cannot be liable for breach of contract with respect to MDL Fishing LLC because there is no privity of contract between Ocean Yachts and MDL Fishing LLC. The Daleys individually, who have no interest in the yacht, have no standing to file any claim. Further, there is no evidence or consideration to support the formation of a separate contract between Ocean Yachts and MDL Fishing after the yacht was purchased.

Apart from the lack of privity, summary judgment is appropriate because, regardless of how Plaintiffs have styled their cause of action, it is no more than a cause of action for breach of warranty. This Court reached the same conclusion previously on Defendant Twin Disc's motion for summary judgment. *See, Daley v. Twin Disc*, 440 F.Supp.2d 48, 51 (D.Mass.2006). In coming to this conclusion this Court relied on *New England Power Co. v. Riley*, 20 Mass.App.Ct. 25, 477 N.E.2d 1054 (1985).

7

In *New England Power Co. v. Riley*, New England Power purchased two boilers from Riley and defects quickly materialized.  Riley was unable to fix the boilers, and New England Power argued such conduct constituted a separately actionable independent promise to repair.  The court held that these promises to repair did not form separate contracts with the plaintiffs and that an express warranty limiting itself to the repair or replacement of defects, was a specification of a remedy. The court held that "where there are a warranty and a promise to repair the remedy of the first resort is the promise to repair.  If that promise is not fulfilled, then the cause of action is the underlying breach of warranty."  477 N.E.2d  at 1058.

Thus with regard to Twin Disc, this Court held that since all the work performed was done under warranty and at no cost to Mr. Daley himself, and Mr. Daley denied that anyone from Twin Disc made any promises to him about the repairs on either occasion, no reasonable juror could find that any of the alleged promises were independent of the warranty.  *See, Daley v. Twin Disc*, 440 F.Supp.2d at 51.  Rather "[the Daleys' and MDL Fishing LLC's] claim in the present action is also an exercise in creative pleading that is similarly mischaracterized as a breach of a promise to repair. Each of the alleged promises to repair made by the Twin Disc were contractual warranty remedies." *Id.*

The same is true with regard to the plaintiffs' claim against Ocean Yachts.  As previously, stated the 5&1 Warranty contains a provision limiting the boat owner's remedies to the repair or replacement of the hull and associated equipment manufactured by Ocean Yachts.

As testified to at his deposition, all the repair work was performed was done under warranty and at no additional cost. *Defendant's statement of facts,* ¶10-14.  Therefore, the Daleys and MDL Fishing have not asserted claims for breach of a "promise to repair," but rather have asserted a claim

8

for breach of warranty.[3]  Further all of the Plaintiffs' rights and remedies are controlled by the Uniform Commercial Code.

The distinction (though it is a distinction without a difference) in the legal position between Twin Disc and Ocean Yachts, is that at his deposition, Mr. Daley denied that Twin made any promises to him about fixing the problems with his boat, but testified that Scott Kraweic did make such promises on behalf of Ocean Yachts.  *See,* Deposition of Wayne Daley, p. 159, lines 12-19, attached hereto as composite exhibit A.

This does not defeat Ocean Yachts' entitlement to summary judgment.  In this Court's July 13, 2006 memorandum of decision this Court held that independent promises to repair are unenforceable for lack of consideration.  *See, Daley v. Twin Disc*, 440 F.Supp.2d at 51; *see also, Neuhoff, supra,* 370 F.3d at 201.

Here, neither the Daleys nor MDL Fishing ever paid any consideration that would bind any such alleged oral promise.

> Q.  Okay so is it your view that Ocean Yachts entered into a separate contract with you in January of 2003 that they would fix the engine vibrations no matter what?
>            MR. CRIMMINS: Objection.
> You can answer.
> A. Yes.
> Q.  And did you pay them anything to do that?
> A.  No.
> Q.  Did you give them anything, any money or make any promises that you would buy a new boat from them if they did that?

---

[3]  As previously held by this Court, any reliance by plaintiffs on *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197 (D.Mass.2004) would be misplaced since all the work was performed under the express warranty at no cost to the Daleys or MDL Fishing.

A. No.

*See,* Deposition of Wayne Daley, p. 125, lines 12-24, p.126, line 1, attached hereto as composite exhibit A.

In fact, Mr. Daley appears to believe the only consideration paid was that he had purchased new boats from Ocean Yachts in the past. After all the warranty work had been performed, Scott Kraweic of Ocean Yachts wrote Mr. Daley a letter on June 24, 2004 stating that it was Ocean Yachts' position that the problems with the boat had been corrected, and that Ocean Yachts would no longer authorize additional warranty service. When questioned at his deposition about the June 24, 2004 letter, Mr. Daley responded:

> No. I asked Scott to write me this letter to tell me that Ocean Yachts would not handle anymore warranty and would not continue to solve this problem. Ocean Yachts, I bought three new boats from them. They stood behind them for so long and then just washed their hands. I expected their loyalty. That's what they always talk about, Ocean loyalty. And then they washed their hands of it, like everybody else.

*See,* Deposition of Wayne Daley, p. 162, lines 22-24, p. 163, lines 1-7, attached as composite exhibit A; *see also* the June 24, 2004 from Scott Kraweic, attached hereto as exhibit H.

Unfortunately for the plaintiffs, "[p]ast consideration does not support a contract." *See, Greater Boston Cable Corp. v. White Mountain Cable*, 414 Mass. 76, 604 N.E.2d 1315, 1317 (1992).

To the extent that the amended complaint alleges in paragraph 15 that the Plaintiffs forebore taking legal action in reliance on the alleged promises to repair, this Court previously found that there was nothing in the record to support this allegation as it relates to Twin Disc. *See, Daley v. Twin Disc*, 440 F.Supp.2d at 51. Similarly, no correspondence addressed to Ocean Yachts mentions

the possibility of litigation, let alone a promise to forebear.[4]

Thus Plaintiffs have not made a single actionable allegation concerning any independent "promise to repair" or that a separate contract (apart from the express warranty) was formed between Ocean Yachts and MDL Fishing.

To the extent that this Court treats count I as a claim for breach of warranty, the claim is time-barred under M.G.L. c. 106, §2-725(c) which provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Thus, and also as previously held in this Court's July 31, 2006, memorandum of decision, the

---

[4] One letter of correspondence addressed to Ocean Yachts contains the following paragraph: "JOHN I HAVE NEVER SUED ANYONE BEFORE AND I DO NOT WANT TO START, BUT I CANNOT TAKE THIS AGGRAVATION OR TORTURE ANYMORE. I AM ASKING YOU TO TAKE THIS BOAT BACK OR GET US IN A NEW BOAT. I AM A BIG MAN, I WILL BE REALISTIC IF YOU ARE, I HAVE NOT SENT ANY OF THESE LAST LETTERS TO OYSTER HARBORS I WILL WAIT TO HEAR FROM YOU." *See, Jan. 4, 2004, letter of correspondence, emphasis original*, attached hereto as exhibit F.

In response to this letter of correspondence, Ocean Yachts replied that it was MAN's responsibility to stand up to their warranty obligations concerning the engines, that the boat was operating within parameters, and that if that was unsatisfactory that Mr. Daley contact Oyster Harbor for the possible purchase of a replacement boat. *See, Jan. 29, 2004, letter of correspondence*, attached hereto as exhibit G.

Clearly, neither the Daleys nor MDL ever expressed a willingness to forbear suit, nor did Ocean Yachts ever request the plaintiffs to relinquish any claim against it. As such, no consideration exists to bind any alleged independent promise to repair. *See, Daley v. Twin Disc*, 440 F.Supp.2d at 51; *see also*, *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d at 202.

Moreover, this "forbearance" took place after Ocean Yachts stated it would perform no more warranty work and after the statute of limitations on the warranty had expired in July of 2003.

breach of warranty occurred in July 1999, when the boat was purchased.  *See, Daley v. Twin Disc*, 440 F.Supp.2d at 52.  Thus the statute of limitations expired in July of 2003.  *Id.*[5]

     *See also*, *Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350 (1989).  There a ship buyer purchased a ship that had been built by a shipyard in 1972, with engines installed by an engine manufacturer.  The engines malfunctioned in 1980 and the ship buyer brought an action against the engine manufacturer in 1982.  Relying on M.G.L. c. 106, §2-725, the court held that because the only injury suffered was economic loss, the statute of limitations was four years, running from the time the manufacturer sold the ship to the initial purchaser.

     In addition to the defense of statute of limitations, Ocean Yachts is also entitled to summary judgment  because the boat has been used for commercial purposes, which voids any potential warranty covering the boat, and because the 5&1 Warranty expressly disclaims any and all liability for parts or components not manufactured by Ocean Yachts, Inc.

     As previously discussed, all of the Plaintiffs' rights and remedies are controlled by the Uniform Commercial Code, which provides that implied warranties may be disclaimed.  *See, Theos & Sons, Inc., v. Mack Trucks, Inc.,* 431 Mass. 736, 729 N.E.2d 1113 (2000).

     M.G.L. 106 § 2-316 provides for the exclusion or modification of warranties.

---

[5]  Similar to the summary judgment entered in favor of Twin Disc, to the extent that the plaintiffs learned of the defects in the summer of 2000, the claim would still be time-barred since the statute of limitations would have expired in or about the summer of 2004.  *See, Daley v. Twin Disc*, 440 F.Supp.2d at 52.

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (section 2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

3) Notwithstanding subsection (2)

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

> (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (sections 2-718 and 2-719).

(5) The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this Article be considered commodities subject to sale or barter, but shall be considered as medical services.

*See*, M.G.L. 106 § 2-316.

Here, the 5&1 Warranty contained the following terms:

> **Application of Limited Warranty**
> Ocean Yachts Inc.'s Limited Warranty is extended solely on new Ocean

yachts sold and delivered to the original purchaser by an authorized Ocean Yachts, Inc. Dealer, within eighteen (18) months of manufacture, and is transferrable to subsequent purchasers during the warranty period. This Limited Warranty is **not** extended to an Ocean Yacht used for commercial purposes, and the obligations of Ocean Yachts, Inc. under this Limited Warranty shall cease if the Ocean Yacht is hired, chartered or otherwise placed into commercial usage.

*See,* 5&1 Warranty, *emphasis original*, attached hereto as exhibit B.

The warranty further provides in pertinent part:

**Warranty Exclusions**

**THIS WARRANTY SPECIFICALLY DOES NOT APPLY TO:**

4.     Any boat which has been used for racing, rental, charter or other commercial purposes.

*See,* 5&1 Warranty, *emphasis original*, attached hereto as exhibit B.

It is uncontroverted that the boat was used for such charter purposes, voiding the warranty.   As discussed *supra,* Wayne Daley testified that MDL Fishing LLC is the registered owner of the boat.  *See,* Deposition of Wayne Daley, p. 112, ln. 15-17, attached hereto as composite exhibit A.  This is supported by the registration of the boat filed with the Coast Guard. See, exhibit E. Moreover, paragraph 7 the Certificate of Organization filed on behalf of MDL Fishing LLC by Wayne Daley as the manager states that:

The sole and exclusive purpose of the LLC is to engage in the following business activities:

(a)     To own and operate a commercial fishing and charter business serving the fishing industry and the general public.

(b)     To own and operate all materials and equipment, including boats, to conduct a commercial fishing and charter business.

*See,* exhibit D.  Further, it was Mr. Daley's testimony that the boat was purchased and used for charter purposes.  *See,* Deposition of Wayne Daley, p. 16, lines 7-20, attached hereto as

14

composite exhibit A.

Therefore the Plaintiffs voided the 5&1 Warranty since it was not applicable to commercial or charter use by its terms.

It is also uncontroverted that the alleged vibration did not begin until after the Plaintiffs had couplings installed which couplings were not manufactured by Ocean Yachts.

Q.    Do I take it then that you believe that the use of Vulcan Couplings caused the vibration created by the engines to be transmitted in one fashion or another to the rest of the boat in a way that you find unacceptable?

A.    Yes.

*See,* Deposition of Wayne Daley, p. 66, lines13-19, attached hereto as composite exhibit A .

Mr. Daley further testified that the new couplings were installed more than one year after purchase and the vibration problem began after that. "That is when it all started. That's the vibration. Never had the vibration beforehand." *See,* Deposition of Wayne Daley, p. 62, lines 19-21, attached hereto as composite exhibit A.

Moreover, Mr. Daley testified that the boat ran "superb" until the couplings were installed.

Again, M.G.L. 106 § 2-316 provides for the exclusion or modification of warranties.

The 5&1 warranty provides in pertinent part:

**Warranty Exclusions**

**THIS WARRANTY SPECIFICALLY DOES NOT APPLY TO:**

(1)    Any associated equipment or component of your new Ocean Yacht which was not manufactured or built by Ocean Yachts, Inc. (Major mechanical components, such as engines, generator sets, electronics, appliances, fire extinguisher systems, and air conditioning, for example, are warranted by the manufacturer of

those components. They have authorized service dealers in most major boating markets. Your authorized Ocean Dealer will identify such dealers upon request. Ocean Yachts, Inc. will assign its right, if any, to warranty for defects in material or workmanship by the manufacturer of such associated equipment or components.)

(2)     Any boat which has been structurally or substantially altered without prior written approval of Ocean Yachts, Inc.

*See,* 5&1 Warranty, attached hereto as exhibit B.

Since it is uncontroverted that there was no problem with the boat before the Plaintiffs installed the Vulcan Couplings, and since the 5&1 Warranty specifically excludes liability for defects caused by equipment or components that are not manufactured by Ocean Yachts, Defendant Ocean Yachts is entitled to summary judgment.

Lastly, Plaintiffs have no recoverable damages. As discussed *supra* the Plaintiffs have no actual damages, since all of the repair work was performed under the various warranties at no cost to the Plaintiffs themselves.

Further, M.G.L. c. 106, §2-719(3) provides:   "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

The 5&1 Warranty provides:

**Damages Disclaimer**

OCEAN YACHTS, INC. DISCLAIMS ANY LIABILITY FOR INCIDENTAL, CONSEQUENTIAL OR INDIRECT DAMAGES RESULTING FROM ANY BREACH OF WARRANTY PROVIDED BY LAW INCLUDING ANY LOSS OF USE OF THE NEW OCEAN YACHT COVERED HEREIN.

*See,* 5&1 Warranty, attached hereto as exhibit B.

Thus, Ocean Yachts cannot be held liable for the loss of incidental or consequential

16

damages, having effectively disclaimed its liability for them in the 5&1 Warranty. *See, Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 548 N.E.2d 182 (1990).

## <u>CONCLUSION</u>

Ocean Yachts is entitled to summary judgment in its favor. First, there is no contract between MDL Fishing LLC and Ocean Yachts. Second, there was no consideration to support any independent contract between Ocean and MDL Fishing. Third, the only obligation undertaken by Ocean Yachts was set out in its written 5&1 Warranty which was voided when the boat was used for commercial and/or charter purposes. Apart from that basis, the Warranty does not cover associated equipment or components that were not manufactured by Ocean Yachts (as is the case here where Plaintiffs' claims center on the engine and engine couplings). Finally, to the extent there is any claim under warranty that claim is time-barred. Accordingly, Defendant Ocean Yachts requests this Court enter summary judgment in its favor on Count I.

OCEAN YACHTS, INC.
 By its attorney,


/s/Howard M. Brown
HOWARD M. BROWN
BBO #547948
Bartlett Hackett Feinberg P.C.
155 Federal Street
Boston, MA 02110
Tel. (617) 422-0200

Dated:November 30, 2006




SEGREDO & WEISZ, P.A.
9350 South Dixie Highway-Suite 1500
Miami, Florida 33156
(305) 670-3820 Telephone
(305)670-8230 Facsimile

By: /s/ Michel Ociacovski Weisz
Michel Ociacovski Weisz, Esquire
Fla.Bar.No.: 336939
Attorney for Defendant Ocean Yachts

18

EXHIBIT "A"

Wayne Daley

10

A.    Canton, Mass.

Q.    Same location as Daley's Auto Service?

A.    No.

Q.    What is the location of FAB(sic.)?

A.    395 Washington Street.

Q.    One of the plaintiffs in this case is MDL Fishing, LLC.  What is MDL Fishing, LLC, Mr. Daley?

A.    That's just a limited liability corporation that my wife and I set up.

Q.    When did you set up that corporation?

A.    When we bought the boat back in '99.

Q.    When you say, quotes, when we bought the boat, what boat are you referring to?

A.    The 48 Ocean yacht.

Q.    That's the boat which --

A.    That we're all here for, yeah.

Q.    And do I take it that you and your wife, Nadine, originally took title to that boat?

        MR. CRIMMINS:  Objection.

A.    Correct.

        MR. HERMES:  What's the basis for your objection, sir?

Wayne Daley

12

yacht has never been in the name of Nadine Daley personally?

A.    Yes.

Q.    That is a correct statement, sir?

A.    That's correct.

Q.    And do I understand correctly that you and your wife, Nadine, have some interest in MDL Fishing, LLC?

A.    That's correct.

Q.    What is the nature of your interest in MDL Fishing, LLC?

A.    I'm a 50 percent partner.

Q.    Is that with your wife?

A.    Correct.

Q.    In addition, you are the managing agent of the LLC; is that correct?

A.    Correct.

Q.    Have you at any time personally ever owned the 48-foot Ocean yacht either alone or in conjunction with another person?

A.    No.

Q.    And is it a fair statement, sir, that Nadine Daley has never owned the 48-foot Ocean yacht either alone or in conjunction with

Wayne Daley

16

onths"?

    A.    Because of the climate in this area.

    Q.    What about the climate?

    A.    During the winter it's awful cold and snowy. Most of the marinas want the boats out of the water.

    Q.    All right. Now, when you purchased the 48-foot yacht, did you have a contemplation that it would be used for charter on certain occasions?

    A.    Yes.

    Q.    What did you have in mind when MDL purchased the boat as to how frequently or in what way the boat would be used as a charter?

    A.    We would just do some charters to curtail the costs of the boat.

    Q.    Did you contemplate that because of the charter use of the boat, you would be deducting costs incurred against income taxes?

    A.    Correct.

    Q.    Is the organization of MDL Fishing, LLC such that the gains and losses, if any, of that corporation are passed through to you personally on your tax return?

wayne Daley

62

1  train from the shafts from the back of the

2  transmissions back was in perfect order.

3      Q.   At some point I think you told me that

4  the couplings were replaced, that the Sentinel

5  couplings were replaced with Vulcan couplings;

6  is that correct?

7      A.   That's correct.

8      Q.   What observations did you make, if

9  any, with respect to the operation of the

10  48-foot Ocean as it related to vibrations after

11  the replacement of the Sentinel couplings with

12  the Vulcan couplings?

13     A.   Ask that question again, please?

14     Q.   After the Sentinel couplings were

15  replaced with the Vulcan couplings, what

16  observations did you make with respect to the

17  operation of the 48-foot Ocean yacht as it

18  related to vibration?

19     A.   That is when it all started.  That's

20  the vibration.  Never had the vibration

21  beforehand.

22     Q.   And you told me that there were

23  couplings that you were informed that MAN

24  selected in order to deal with a vibration

Wayne Daley

66

inappropriate for use on the 48-foot Ocean?

A.   I can't say they were inappropriate, but they have to be stiffer, and that's what's traveling this vibration all the way through the boat.  That's the way I feel.

Q.   Did you ever come to an understanding why it was that the Sentinel couplings failed?

A.   Just what was told to me, that they would not handle the vibration from the engine. That's why they came apart.

Q.   Do I understand it or -- let me ask that differently.

Do I take it then that you believe that the use of Vulcan couplings caused the vibration created by the engines to be transmitted in one fashion or another to the rest of the boat in a way that you find unacceptable?

A.   Yes.

Q.   Now, tell me what the vibrations were, as best you can, that you first experienced after the Vulcan couplings were installed?

MR. CRIMMINS:  I'm sorry, I lost the question.  Could you either repeat it or

Wayne Daley

110

see that Exhibit 3 has a blank warranty card
that goes with it?

A.    Yes.

Q.    Is that your signature on the warranty
card?

A.    Yes.

Q.    And is that your wife's signature
alongside yours?

A.    Yes.

MR. WEISZ:  Would you mark that as
Exhibit 4, please.

(Exhibit 4 marked

for identification)

BY MR. WEISZ:

Q.    Mr. Daley, looking at Exhibits 3 and
4.  When you signed Exhibit 4, which is the
warranty card, was it attached to the warranty?

A.    I believe so.

Q.    Okay.  And do you have in your
possession a copy of the Ocean written warranty
that's Exhibit 3?

A.    In my possession right now, no.

Q.    Did you have it at the time you bought
the boat?

Wayne Daley

111

A.    Yes.

Q.    I ask you to look at another document, and if you would, let me know what it is.  It's marked at the bottom WD 00322 through WD 00325.

(Pause)

BY MR. WEISZ:

Q.    Do you recognize that?

A.    Yes, I do.

Q.    What is that document?

A.    The organization papers for MDL Fishing.

Q.    And is that your signature on the last page?

A.    Yes.

MR. WEISZ:  Could you mark that as Exhibit 5, please.

(Exhibit 5 marked
for identification)

Q.    And then let me show you another document, it's two pages, and tell me if you can identify that document.

A.    It's the documentation for the boat.

Q.    Is that documentation that -- is that the documentation that registers the ownership

Wayne Daley

112

of the boat with the United States Coast Guard?

    A.    Yes.

    Q.    Is it a US documented boat?

    A.    Yes, it is.

            MR. WEISZ:  Would you mark that,
please, as Exhibit 6.

            (Exhibit 6 marked

            for identification)

BY MR. WEISZ:

    Q.    Just so we're clear with respect to
Exhibit 6, this is the registration for the
48-foot Ocean yacht that's in dispute in this
litigation?

    A.    The documentation, yes.

    Q.    And who is the registered owner of the
boat?

    A.    MDL Fishing.

    Q.    Now, in order to get the certificate
of documentation, did you have to fill out an
application?

    A.    Yes.

    Q.    And you sent that application in to
the Coast Guard?

    A.    Correct.

Wayne Daley

119

Q.   Did you document that problem?

A.   Yes.

Q.   Okay.  And how did you -- who did you
notify of that problem?

A.   Craft who is the -- no.  When we first
bought the boat, it was American Diesel, Paul
Harrison.

Q.   And why did you notify them about the
excessive soot?

A.   He was the warranty dealer for MAN in
the area.

Q.   And did he do anything to try to take
care of that problem?

A.   Yes.

Q.   Did he charge you to try to take care
of that problem?

A.   No.

Q.   Did he do that under a warranty?

A.   Yes.

Q.   Whose warranty was he doing it under?

A.   MAN's.

Q.   Was he able to remedy the soot
problem?

A.   No.

Wayne Daley

121

Q.    By whom?  I didn't mean to stop your answer.

A.    I believe Craft changed them.  And I was told that they were the wrong ones.

Q.    Were they changed out under a warranty?

A.    Yes.

Q.    Whose warranty?

A.    MAN's, I believe.  Either MAN's or Ocean's.  I don't have that in front of me.

Q.    And in October or November of 2000 when the couplings were changed out, that's when the vibration problem began?

A.    Yes.

Q.    Did you have any discussions about this vibration problem with anybody at Ocean Yachts?

A.    Yes.

Q.    From your perspective, is it your belief that Ocean Yachts is responsible for the vibration problem?

MR. CRIMMINS:  Objection.

You can answer.

A.    I don't know, because every time

Wayne Daley

123

They decided that once and for all they would take it back to Ocean and solve these problems for a three-time customer.

Q.    Solve what problems?

A.    The vibration problems and along with leveling the stringers, because that's what MAN was saying was causing the vibration.

Q.    Okay.  So is it your testimony that Ocean Yachts said no matter what the problem is and no matter who's causing the problem, we're going to fix it?

A.    Definitely.

Q.    Okay.  And so they made this to you verbally or --

A.    Verbally.

Q.    Okay.  And what did they do?

A.    At that time they brought the boat back to New Jersey, leveled the stringers.

Q.    All right.

A.    MAN was supposed to come and do injection pumps or injectors or whatever they said they were going to do.

I believe MAN came, didn't do a thing.

The problem was supposed to be solved,

Wayne Daley

125

A.   I do not recall.

Q.   What were the results of the sea trial?

A.   It was worse than ever.

Q.   And who did you have look at the boat to see if it was worse than ever?

A.   First of all, I called Scott again. Every time we had a problem, I called Scott. The guys from MAN, Twin Disc was basically out of it at that time, and they all would have a pow-wow and discuss what they were going to do.

Q.   Okay.  So is it your view that Ocean Yachts entered into a separate contract with you in January of 2003 that they would fix the engine vibrations no matter what?

        MR. CRIMMINS:  Objection.

        You can answer.

A.   Yes.

Q.   And did you pay them anything to do that?

A.   No.

Q.   Did you give them anything, any money or make any promises that you would buy a new boat from them if they did that?

Wayne Daley

130

Q.   Okay.  Let's go back to what was marked as Exhibit 1 to this deposition, which was a copy of your amended complaint.  Let's look at paragraph 14, sub part B on page three.

MR. SPENCER:  I'm sorry, sub part --

MR. WEISZ:  B, as in boy.

MR. CRIMMINS:  Page three, paragraph 14, sub part B.

BY MR. WEISZ:

Q.   It states, "In May and June 2001 Ocean Yachts and MANN installed new injector pumps."

What basis do you have to assert that Ocean Yachts actually installed injector pumps?

MR. CRIMMINS:  Objection.

A.   Because every time I would talk to Ocean Yachts or MAN, there was always a problem on who was going to pay for something.

Q.   I'm not asking you who paid for it. I'm asking you what facts do you rely on for the proposition that Ocean Yachts installed new injector pumps?

A.   Ocean Yachts did not do it physically themselves.

Wayne Daley

131

Q.   Did Ocean Yachts to your knowledge ever do any work on the engines at all from the beginning of the day you owned it until today?

A.   Just being involved with the mounts, as far as I know.

Q.   What did Ocean Yachts do with respect to the mounts?

A.   Paid to have them changed, also took the boat like we spoke of before back to New Jersey to relevel the stringers.

Q.   Other than that, to your knowledge did Ocean Yachts do a single piece of work on the engines at any time from the day you owned it until today?

A.   On the engines, no.

Q.   How about on the transmissions?

A.   No.

Q.   How about on the couplings?

A.   No.

Q.   Who at Ocean Yachts, if anyone, ever told you that changing the injector pumps would fix the vibration problem?

A.   Scott Krawiec and myself had discussed it.  He knew about it.  He was just going on the

Wayne Daley

132

information that he received from MAN, like myself.

Q.   At subparagraph C of the amended complaint it states, "In November 2001 Ocean Yachts performed a new alignment on the transmission."

Did they do that?

A.   They sent somebody out to do it.

Q.   Was the alignment done?

A.   Yes.

Q.   Did you pay for it?

A.   No.

Q.   Do you know who paid for it?

A.   Ocean Yachts.

Q.   The statement further continues, "representing that this would solve the problems."

Who at Ocean Yachts told you that aligning the transmission would solve the problems?

A.   It would have been a conversation with Scott Krawiec.

Q.   So are you saying that Scott Krawiec said to you, Mr. Daley, we'll realign the

Wayne Daley

134

What facts do you rely on that Ocean Yachts had anything to do with actually replacing the injector pumps?

A.    Just the phone calls back and forth to Scott and the different pow-wows, the different people that he had talked to from PDI and MAN.

Q.    Did Ocean Yachts or anybody from Ocean Yachts actually replace the injector pumps?

MR. CRIMMINS:  Objection.

If you know.

A.    No.

Q.    Do you know who did replace the injector pumps?

MR. SPENCER:  I'm sorry --

MR. WEISZ:  The answer was no.

A.    I'll have to look at the list.  I don't remember.

(Pause)

A.    Craft Power.

Q.    Do you know what the relationship is between Performance Diesel and MAN?

A.    I believe they're distributors for their engines.

Q.    In the amended complaint you've made a

Wayne Daley

159

MR. CRIMMINS:  Objection.

A.  There is a question in that Ocean Yachts said they would solve the problem, they took it upon themselves to try to solve the problem.  Now they're washing their hands.

Q.  I see.

Is there any possibility that what Ocean Yachts actually told you was they would help you try to solve the problems?

MR. CRIMMINS:  Objection.

A.  None whatsoever.

Q.  So flat out Scott Krawiec said Ocean Yachts would solve the problems no matter what, under any circumstances, right?

MR. CRIMMINS:  Objection.  Asked and answered.

BY MR. WEISZ:

Q.  Is that your testimony, sir?

A.  Yes.

Q.  Now, let me show you another letter dated January 4, 2004.

(Pause)

Q.  Did you write this letter?

A.  I did.

Wayne Daley

162

for identification)

(Pause)

THE WITNESS:  While you're looking,
I'm going to take a break.

MR. WEISZ:  Okay.

(Recess taken)

BY MR. WEISZ:

Q.   Let me show you a letter dated
June 24, 2004 and ask you if you recognize that.

(Pause)

Q.   Do you recognize that letter,
Mr. Daley?

A.   I do.

Q.   Did you receive it?

A.   I did.

Q.   Who is that letter from?

A.   Scott Krawiec.

Q.   And who is it addressed to?

A.   Myself.

Q.   Did you respond to that letter in any
way?

A.   No.  I asked Scott to write me this
letter to tell me that Ocean Yachts would not
handle anymore warranty and would not continue

EXHIBIT "B"

# 5 & 1 Year Transferable Limited Warranty

## Registration of Warranty and Purchase

OCEAN YACHTS, INC. includes with each new boat it manufactures, a warranty and registration card which must be filled out and mailed to Ocean Yachts, Inc. within thirty (30) days after delivery of your new Ocean Yacht by dealer.

The Maritime Safety Act of 1984 requires all boat manufacturers to maintain a record of all first retail purchasers and their current address for the purpose of notification in case of discovery of defective parts or equipment that create a substantial risk of personal injury to the public.

FAILURE TO COMPLETE AND RETURN THE WARRANTY AND PURCHASE REGISTRATION CARD WITHIN THIRTY (30) DAYS OF DELIVERY OF YOUR NEW OCEAN YACHT CAN VOID THE WARRANTY, AFFECT YOUR WARRANTY/LEGAL RIGHTS AND WILL WAIVE YOUR RIGHT TO RECEIVE NOTIFICATION OF DEFECT AND/OR REPAIR AT THE MANUFACTURER'S EXPENSE IN THE FUTURE.

## Application of Limited Warranty

Ocean Yachts Inc.'s Limited Warranty is extended solely on new Ocean Yachts sold and delivered to the original purchaser by an authorized Ocean Yachts, Inc. dealer, within eighteen (18) months of manufacture, and is transferable to subsequent purchasers during the warranty period. This Limited Warranty is not extended to an Ocean Yacht used for commercial purposes, and the obligations of Ocean Yachts, Inc. under this Limited Warranty shall cease if the Ocean Yacht is hired, chartered or otherwise placed into commercial usage.

## Five Year Limited Structural Hull Warranty

Ocean Yachts, Inc warrants that the hull manufactured by Ocean Yachts, Inc. shall be free from structural defects due to materials or workmanship for a period of five (5) years from the state of manufacture, under normal consumer use.

## One Year Limited Associated Equipment Warranty

Ocean Yachts, Inc warrants that the associated equipment manufactured by Ocean Yachts, Inc. will be free from defects in material and workmanship for a period of one (1) year from the date of delivery of a new Ocean Yacht by an authorized Ocean Yachts, Inc. dealer.



*Ocean*
5 & 1
**Warranty Protection Program***
on Hull and Associated Equipment

*Ocean Yachts, Inc.*
*5 Year Limited Hull and 1 Year Limited Associated Equipment Warranty*

*Warranty Program terms and conditions available upon request

## A GENERATION AHEAD

OCEAN YACHTS, INC.
P.O. Box 312, Egg Harbor, NJ 08215
609-965-4616 / FAX 609-965-4914

PRINTED USA                    1/96

EXHIBIT NO. 3
5-3-06
Daley

*Ocean*
5 & 1
**Warranty Protection Program***

OCEAN YACHTS, INC.
P.O. Box 312
Egg Harbor, NJ 08215

PLACE
STAMP
HERE

## Owner Registration of Warranty

To register the warranty, the warranty registration card should be mailed to:

Ocean Yachts, Inc.
Post Office Box 312
Egg Harbor, New Jersey 08215
Attention: Warranty Registration

within thirty (30) days of the sale/delivery date of your new Ocean Yacht. To register or to obtain performance of any warranty obligation, the owner must maintain a claim in respect to defects in material or workmanship to Ocean Yachts, Inc., Post Office Box 312, Egg Harbor, New Jersey 08215, Attention: Warranty Claims Supervisor. When reporting a claim, the owner must provide the following information:

a)   Full name and address of owner
b)   Model and hull number of the boat on which the claim is being made
c)   Date of Sale/Delivery and name of Selling Dealer
d)   Location of the boat
e)   Full details of the problem being reported
and
f)   Photographs of the defect(s).

## Ocean Yacht, Inc.'s Obligations

Ocean Yachts, Inc. will, within a reasonable time after receipt of a warranty claim, at its option either have the boat returned to its factory, its dealer or authorized representative, exercise its option to repair or replace a boat hull or associated equipment which shall, within the limited warranty period, be determined to have been defective in material or workmanship as stated in the respective hull and associated equipment warranties.

Prior to the authorization of any warranty repair(s), Ocean Yachts, Inc. will require such boat or parts to be returned to its factory, its dealer or authorized representative. Arrangements for transportation/shipment/delivery charges to be paid by the boat owner. Neither Ocean Yachts, Inc., its dealer, or authorized representative will be responsible for any removable items not removed from the boat prior to shipment. Ocean Yachts, Inc. will then authorize such expense in replacing parts or corrections of defects under this warranty, as Ocean Yachts, Inc. in its sole discretion deems appropriate.

If warranted components are repaired or replaced under the terms herein, the terms of this limited warranty shall cover such components for a period of ninety (90) days from the date of repair or replacement or until the end of the original warranty period, whichever is later.

## Warranty Exclusions

### THIS WARRANTY SPECIFICALLY DOES NOT APPLY TO:

1.   Any associated equipment or component of your new Ocean Yacht which was not manufactured or built by Ocean Yachts, Inc. (Major mechanical components, such as engines, generator sets, electronics, appliances, fire extinguishing systems, and air conditioning, for example, are warranted by the manufacturer of those components. They have authorized service dealers in most major boating markets. Your authorized Ocean Yachts, Inc. service dealers can assist you upon request. Ocean Yachts, Inc. will assign its rights, if any, to the warranty for defects in material or workmanship by the manufacturer of that associated equipment or components.)

2.   Any boat which has been structurally or substantially altered without prior written approval of Ocean Yachts, Inc.

3.   Any boat which has been subjected to abuse, unreasonable use, including failure to provide reasonable and necessary maintenance, negligence, improper docking/mooring, vandalism or accident.

4.   Any boat which has been used for racing, rental, charter or other commercial purposes.

5.   The cost of removal or reinstallation of any associated equipment or part, or disassembly or reassembly of the unit of which it is a component.

6.   Varnishes, gelcoats, paints, fabrics, chromium plated or stainless steel finishes due to varying effects resulting from different climatic and use conditions.

7.   Any boat which has been overpowered so as to exceed the maximum engine horsepower specifications recommended by Ocean Yachts, Inc. recommended engine horsepower specifications.

8.   Any installation of products not to Ocean Yachts, Inc.'s recommended specifications, because of the possibility that the use of these products will exceed Ocean Yachts, Inc.'s or government specifications for overpowering, steering, handling, speed and safety.

9.   Speeds, fuel consumption and other performance characteristics because they vary with conditions and are not warranted.

10.   Any cracking, galvanic, or other corrosion, or any deterioration of underwater items.

11.   Any Ocean Yachts, Inc. boat sold to the original retail purchaser by anyone other than an authorized Ocean Yachts, Inc. dealer.

13.   Any charges incurred by any boat returned to the factory, the dealer or authorized representative for examination prior to authorization of any warranty repairs.

## DISCLAIMERS

### Warranty Disclaimer

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE EXTENDED BY OCEAN YACHTS, INC., OTHER THAN THOSE EXPRESSLY SET FORTH HEREIN. THE DURATION OF ANY IMPLIED WARRANTY OF MERCHANTABILITY SHALL BE LIMITED TO AND COINCIDENT WITH THE DURATION OF THIS EXPRESS WARRANTY. WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE ARE SPECIFICALLY DISCLAIMED.

### Damages Disclaimer

OCEAN YACHTS, INC. DISCLAIMS ANY LIABILITY FOR INCIDENTAL, CONSEQUENTIAL, OR INDIRECT DAMAGES RESULTING FROM ANY BREACH OF WARRANTY PROVIDED BY LAW INCLUDING ANY LOSS OF USE OF THE NEW OCEAN YACHT COVERED HEREIN.

### Warranty Limitations

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR ON THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES AND/OR THE EXCLUSION OF INCIDENTAL AND CONSEQUENTIAL DAMAGES MAY NOT APPLY TO YOU.

THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH MAY VARY FROM STATE TO STATE.

### Distributors/Dealers Not Agents

The Ocean Yachts, Inc.'s distributors/dealers or designated service representatives are not the agents of Ocean Yachts, Inc. Ocean Yachts, Inc. neither assumes nor authorizes the distributors/dealers/designated service representatives or any other person to assume for Ocean Yachts, Inc., any liability, obligation or expense on its behalf, and makes no representation of defects in your new Ocean Yacht, other than those expressly authorized herein and only if such expense is authorized in advance and in writing by Ocean Yachts, Inc.

### Product Improvement Disclaimer

Ocean Yachts, Inc.'s reserves the right to improve its products through changes in design and material without obligation to incorporate such changes in Ocean Yachts' of prior manufacture.

---

Owner please note.

Please help us ...uch you prompt with technical or warranty informa about your Ocean Yacht. Notify us immediately if you char your address.

# Ocean Yachts Purchase and Warranty Registration

Please complete all information within thirty (30) days of sale/delivery of your boat, and return self-addressed card to Ocean Yachts, Inc. Copy original for your personal file, and return to OCEAN YACHTS, INC., P.O. Box 312, Egg Harbor, NJ 08215.  NOTE: Failure to complete and return the warranty and purchase registration card within thirty (30) days of delivery to you of your new Ocean Yacht can void the warranty, affect your warranty/legal rights and will waive your right to receive notification of product defect and/or repair at the manufacturer's expense in the future. (Please type or print).

Owner's Name _____

Address _____

City & State _____ Telephone (_____) _____

Selling Dealer _____

Hull Identification No. _____ Model _____ Length _____

Date of Delivery _____ Hours upon Delivery _____

My dealer has given, explained, and I have read and hereby acknowledge the above Ocean Yachts, Inc. Warranty.

EXHIBIT "C"

## Ocean Yachts Purchase and Warranty Registration

e complete all information within thirty (30) days of sale/delivery of your boat, and return self-addressed card to
n Yachts, Inc. Copy original for your personal file, and return to OCEAN YACHTS, INC., P.O. Box 312, Egg Harbor,
215. NOTE: Failure to complete and return the warranty and purchase registration card within thirty (30) days of
ry to you of your new Ocean Yacht can void the warranty, affect your warranty/legal rights and will waive your right
eive notification of product defect and/or repair at the manufacturer's expense in the future. (Please type or print).

r's Name ___ MDL Fishing LLC Wayne + Nadine Dalley ___

ess ___ P.O. Box 619, 8 Trotter Rd ___

: State ___ Canton, MA 02021 ___ Telephone ( 781 ) 829 - 9571

g Dealer ___ Oyster Harbors Marine, Inc. ___

dentification No. ___ XVU 13948F900 ___ S Model ___ Super Sport ___

of Delivery ___ 7-1-99 ___ Length ___ 48' ___

___ Hours upon Delivery ___ 3 bar ___

ealer has given, explained, and I have read and hereby acknowledge the above Ocean Yachts, Inc. Warranty.

nly Inquiries: (609) 965-4616

2-1-99
DATE

PURCHASER'S SIGNATURE

2-1-99 Nadine Dalley
DATE       PURCHASER'S SIGNATURE

EXHIBIT "D"

Mon p Nw
#8



Daley
EXHIBIT NO. 5
5-3-06

**FILED**

MAY 2 5 1999

MDL FISHING, LLC

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

CERTIFICATE OF ORGANIZATION

Pursuant to the provisions of the Massachusetts Limited Liability Company Act (the "Act"), the undersigned hereby certifies as follows:

1. **Name of the Limited Liability Company.**  The name of the limited liability company formed hereby is MDL FISHING, LLC.

2. **Office of the Limited Liability Company.**  The address of the office of the LLC in the Commonwealth at which the LLC will maintain its records in accordance with the Act is:

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

3. **Agent for Service of Process.**  The name and address of the resident agent for service of process for the LLC is:

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

4. **Date of Dissolution.**  The LLC is to have no specific date of dissolution.  Upon the death, insanity, retirement, resignation, expulsion bankruptcy or dissolution of a Member (each a "Dissolution Event"), the LLC shall be deemed to have dissolved unless, within ninety (90) days after such date, a majority in interest of its remaining Members affirmatively agree in writing to continue the business of the LLC.

5. **Manager.**  The name and address of the sole Manager of the LLC is as follows:

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

WD 00322

6.    **Execution of Documents.** The name and address of the person authorized to execute documents on behalf of the LLC to be filed with the Secretary of State of the Commonwealth of Massachusetts is as follows:

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

Nadine J. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

7.    **Business of the LLC.** The sole and exclusive purpose of the LLC is to engage in the following business activities:

(a)  To own and operate a commercial fishing and charter business serving the fishing industry and the general public.

(b)  To own and operate all materials and equipment, including boats, to conduct a commercial fishing and charter business.

(c)  To borrow money and otherwise incur indebtedness from third parties and to pledge or otherwise grant security interests in its assets to secure such indebtedness, but only to the extent permitted hereunder;

(d)  To issue membership interests provided for herein and any other securities deemed appropriate by the Members of the LLC;

(e)  To take any and all other action necessary to maintain the existence of the LLC as an entity in good standing under the laws of The Commonwealth of Massachusetts and/or to qualify the LLC; to do business as a foreign entity in any other state in which such qualification, in the opinion of the Members of the LLC, is required; and

(f)  To engage in any lawful acts or activities and to exercise any powers permitted to limited liability companies organized under the laws of The Commonwealth of Massachusetts; provided that any such act, activity or power is related or incidental to and necessary, appropriate or convenient for the

2

WD 00323

accomplishment of the foregoing purposes.

8. **Restrictions On Action.**  None

9. **Restrictions On Right To Amend Certificate of Organization.**  None

10. **Maintenance Of Separate Business.**  The LLC shall at all times (a) maintain its books, financial statements accounting records and other corporate documents and records separate from those of any individual, Affiliate or any other entity and characterize itself as a separate entity from any other individual, Affiliate or entity in each and every report, tax return or financial statement, (b) not commingle its assets with those of any individual, Affiliate or other entity, (c) maintain its books of account, bank accounts and payroll separate from those of any individual or Affiliate, (d) act solely in its own name and through its own authorized officers and agents, use separate stationery, invoices and checks and in all respects, hold itself out as a separate entity separate and distinct from its Members and any other entity, (e) make investments directly or by brokers engaged and paid by the LLC or its agents (provided that if any such agent is an Affiliate of the LLC it shall be compensated at a fair market rate for its services), (f) separately manage the LLC's liabilities from those of its Members and all other individuals or Affiliates and pay its own liabilities, including all administrative expenses and compensation to employees, consultants or agents, and all operating expenses, from its own separate assets except that a Member or other Affiliate may pay the organizational expenses of the LLC and maintain a sufficient number of employees in light of the LLC's contemplated business operations, (g) pay from the LLC's assets all obligations and indebtedness of any kind incurred by the LLC, (h) not acquire obligations or security of the LLC's Members or Affiliates, (i) use separate stationery, invoices and checks, (j) not pledge the LLC's assets for the benefit of any entity or make any loans or advances to any entity, (k) correct any known misunderstanding regarding the LLC's separate identity, and (l) maintain adequate capital in light of its contemplated business operations. The LLC shall abide by all organizational formalities, including the maintenance of current minute books, and the LLC shall cause its financial statements to be prepared in accordance with generally accepted accounting principles in a manner that indicates the separate existence of the LLC and its assets and liabilities. The LLC shall (i) pay all its liabilities, (ii) not assume the liabilities of any Member or other Affiliate or incur liability

3

WD 00324

to any owner or its creditors, and (iii) not guarantee the liabilities of any Member or any other Affiliate or any other party. The officers, directors and Members of the LLC (as appropriate) shall make decisions with respect to the business and daily operations of the LLC independent of and not dictated by any Member or other Affiliate. The Members of the LLC shall be required to consider the interests of the creditors of the LLC in connection with all actions conducted by the LLC. For purposes of this Certificate of Organization, "Affiliate" shall have the same meaning as now defined in Section 101 of the United States Bankruptcy Code (the "Code") and shall include all "insiders" (as such term is now defined in Code Section 101) with respect to the LLC, _except that_ the percentage of direct or indirect legal or beneficial interest required to be held by the relevant entity shall be 10%, not 20%.

   11. **Execution of Recordable Instrument**. The name and address of the person authorized to execute, acknowledge, deliver and record any recordable instrument on behalf of the LLC purporting to affect an interest in real property, whether to be recorded with a registry of deeds or filed with a district office of the Land Court, is as follows:

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

   IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true, as of the 15th day of May, 1999.

Wayne V. Daley
27 Trayer Road
P.O. Box 619
Canton, Mass. 02021

4

WD 00325

EXHIBIT "E"



# UNITED STATES OF AMERICA
## DEPARTMENT OF TRANSPORTATION
## UNITED STATES COAST GUARD



Daley.
EXHIBIT NO. 6
5-3-06

HIN: XYU13948F900

# Certificate of Documentation

| VESSEL NAME | OFFICIAL NUMBER | HAILING PORT |
|---|---|---|
| MY DEE LITE | 1083638 | GREEN HARBOR MA |

| GROSS | NET | LENGTH | BREADTH | DEPTH | HULL MATERIAL | SELF PROPELLED |
|---|---|---|---|---|---|---|
| 34 | 27 | 48.7 | 16.0 | 6.7 | FRP | YES |

| PLACE BUILT | YEAR BUILT |
|---|---|
| WEEKSTOWN NJ | 1999 |

| OWNER | OPERATIONAL ENDORSEMENTS |
|---|---|
| MDL FISHING LLC | COASTWISE  FISHERY |

COMPLETE RECORDS ON FILE AT:  NATL VESSEL DOC CTR

**MANAGING OWNER**

MDL FISHING LLC
27 TRAYER ROAD
P O BOX 619
CANTON, MA   02021

**RESTRICTIONS**

NONE

**ENTITLEMENTS**

NONE

**REMARKS**

NONE                                   WD 00330

THIS CERTIFICATE MAY NOT BE ALTERED EXCEPT BY AFFIXING OFFICIAL RENEWAL AND ADDRESS CHANGE DECALS ON THE REVERSE.

| ISSUED AT  NATL VESSEL DOC CTR | SIGNATURE AND SEAL |
|---|---|
| ISSUE DATE  JULY 29, 1999 | *Rhonda S. Gay* |
| THIS CERTIFICATE EXPIRES ON THE LAST DAY OF ___JUL00___ UNLESS RENEWED BY DECAL ON REVERSE. RSG | RHONDA S. GAY  DOCUMENTATION OFFICER |

PREVIOUS EDITION OBSOLETE

REVERSE OF CG-1270 (Rev. 9-92)

## CHANGES OF OWNER ADDRESS
### AFFIX LABEL ISSUED BY DOCUMENTATION OFFICER

| 1. | 2. |
|---|---|
| 3. | 4. |

## CERTIFICATE OF DOCUMENTATION RENEWAL RECORD
### AFFIX ANNUAL RENEWAL DECALS SEQUENTIALLY
### IN THE SPACES PROVIDED BELOW

| 1. | 2. | 3. | 4. |
|---|---|---|---|
| 5. | 6. | 7. | 8. |

*When all renewal spaces are filled, go back to the first position and affix current decals over old decals.*

This vessel must be marked with the Official Number, Name, and Hailing Port shown on the face of this certificate. This original certificate, which must be kept aboard the vessel at all times when the vessel is in operation, must be shown upon the demand of any person acting in an official public capacity.

The person to whom this certificate is issued must surrender it to a Coast Guard documentation officer upon one or more of the following changes: Ownership of the vessel changes in whole or in part; general partners of a partnership owning the vessel change by addition, deletion, or substitution; port of record of the vessel changes; the gross or net tonnages or dimensions of the vessel change; the name of the vessel changes; the restrictions imposed on the vessel change by addition or substitution; legal name of any owner of the vessel changes; a tenant by the entirety owning any part of the vessel dies; a self-propelled vessel becomes non-self-propelled; the trade endorsements for the vessel must be changed by a documentation officer; the discovery of a substantive or clerical error made by the issuing documentation officer; the vessel is placed under the command of a person who is not a citizen of the United States; hailing port of the vessel changes.

Any change in address of managing owner must be promptly reported to a Coast Guard Documentation office.

WD 00331

EXHIBIT "F"


EXHIBIT NO. 11
5-3-06

**WAYNE V DALEY**
PO BOX 619
27 Trayer Rd.
Canton, MA 02021
781-828-9591
FAX 781-828-2393

JAN 4, 2004

OCEAN YACHTS INC
PO BOX 312
EGG HARBOR, NJ 08215

RE: OCEAN YACHTS #48-139

TO JOHN LEEK AND SCOTT KRAWIEC,

JOHN ENCLOSED IS A COPY OF TWO LETTERS, THE FIRST SENT TO ME
FROM PERFORMANCE DIESEL IN DECEMBER 2003. THE LETTER STATES
SOME OF THE PROBLEMS FOUND BY PDI. SOME OF THEM I AGREE WITH
MOST I DO NOT. THE SECOND IS FROM ME, TO PDI, MAN AND YOU. WHEN
YOU READ THE SECOND YOU WILL UNDERSTAND MY FRUSTRATIONS.


THE SECOND LETTER IS MY RESPONSE TO THEIR LETTER. SINCE
NOVEMBER 2000, OCEAN, MAN AND TWIN DISC HAVE ATTEMPTED TO
SOLVE THIS VIBRATION.

TWIN DISC HAS REPLACED THE COUPLERS AND REBUILT THE
TRANSMISSIONS TWICE.

OCEAN HAS REPLACED ENGINE MOUNTS ON MAN'S REQUEST, THEY ALSO
REBALANCED PROPS AND SHAFTS, CENTER BEARINGS AND STRUTS,
REFACED SHAFT COUPLERS, AND REPLACED HUMP HOSES.

MAN HAS REBUILT OR REPLACED THE STARBOARD INJECTION PUMP **FIVE
TIMES** AND REPLACED 16 INJECTORS ALL BUT THE INJECTORS HAVE
CHANGED THE RPM RANGE OF THE VIBRATION. FIRST THE VIBRATION
WAS FROM 800 TO 1600 RPM. NOW IT IS FROM 800 TO 1300-RPM ALL IN THE
STARBOARD ENGINE. YOU CAN WATCH IT SHAKE!!!
THE NEW INJECTORS STARTED A NEW PROBLEM THE STARBOARD SIDE
SMOKES EXTREMELY MORE AT IDLE AND ON AND OFF THROTTLE UNDER
LOAD THAN THE PORT.

JOHN AS YOU CAN SEE IN THE LETTER FROM PDI THEY WANT OCEAN TO
REDO STRINGERS TO STRAITEN OUT ISOLATORS. SCOTT AND I DO NOT
THINK THIS WILL SOLVE THE VIBRATION.

JOHN MY WIFE AND I HAVE BOUGHT THREE NEW BOATS FROM OCEAN
THE FIRST TWO HAD SO FEW PROBLEMS I DO NOT REMEMBER ANY OF
THEM. 48-139 HAS BEEN A PROBLEM SINCE DAY ONE. WE LOVE BOATING
BUT, THIS BOAT HAS BURNT US OUT.

JOHN I HAVE NEVER SUED ANYONE BEFORE AND I DO NOT WANT TO
START, BUT I CAN NOT TAKE THIS AGGRAVATION OR TORTURE ANYMORE.
I AM ASKING YOU TO TAKE THIS BOAT BACK AND OR GET US IN A NEW
BOAT. I AM A BIG MAN, I WILL BE REALISTIC IF YOU ARE. I HAVE NOT
SENT ANY OF THESE LAST LETTERS TO OYSTER HARBORS I WILL WAIT TO
HEAR FROM YOU.

PLEASE RESPOND BY 2/01/04


Sincerely,

EXHIBIT "G"





January 29, 2004

Mr. Wayne Daley
P.O. Box 619
Canton, MA 02021

Dear Wayne,

I received your letter of January 4, 2004. Wayne, we do understand your concerns and frustrations regarding the engine vibration problems with your 48. As we have discussed, Ocean's position is to continue supporting you, in every way possible, to resolve these remaining engine issues as soon as possible. It is MAN'S responsibility to stand-up to their warranty obligations regarding your engines.

We know that MAN has made an issue of the motor mount positioning on your boat. Ocean will re-inspect and, if necessary, re-position any mounts that need to be moved to precise centers. It is our stated position, however, that the mount isolator absorption status will not change.

As I stated aboard your boat during my visit, I feel your 48 currently operates within the parameters of vibration that is consistent with the characteristics associated with the MAN low rpm cylinder cut-out. All of the other MAN boats I have personally operated, have the same MAN design feature vibration. We certainly understand this is not an engine feature owner's enjoy, however, the vibration created is consistent across the board. No other engine package we offered in the 48 SS created this situation.

Wayne, we do appreciate the fact that the 48 is your third Ocean. Loyal family members are important to us. At this point, I recommend that you speak with Oyster Harbors regarding the possible purchase of a replacement boat. If you feel this is a direction you want to pursue, our sales department would be willing to consider any proposal from the dealership. We typically try to do what is necessary, within reason, to maintain our Ocean family members.

Please feel free to contact me if you have any questions or concerns regarding the mount work noted above. I will be happy to discuss any of this with you at your convenience.

Sincerely,

Scott Krawiec
Customer Service Manager
Ocean Yachts Inc.

Cc: John Leek, Ocean Yachts Inc.
     Doug Finney, Ocean Yachts Inc.

Ocean Yachts, Inc., P.O. Box 312, Egg Harbor City, New Jersey 08215

EXHIBIT "H"



June 24, 2004

*Daley*
EXHIBIT NO. *12*
*5-3-06*

Wayne Daley
P.O. Box 619
Canton, MA 02021

Dear Wayne,

Ocean has and will continue to support you as it does every other loyal Ocean Owner. Presently, your boat operates within the parameters of normal operation of a 48 Super Sport powered with 800hp MAN engines. While I understand that you feel differently, we believe that MAN has accomplished everything possible to confirm your engines are running as efficiently as possible. Wayne, based upon the final sea trial conducted at our facility, your vessel is operating properly regarding all performance aspects underway, therefore no additional warranty service will be authorized for this issue.

Please submit, at your convenience, the invoices regarding the cleanup of the excessive overspray and the repair of the head mirror that Ocean has approved. Per your request, I have sent you awlgrip to be used for detailing your engine room and the latches for your cockpit floor hatches. At this point I feel we are up to date on all remaining warranty issues.

I understand Peter Maryott has contacted you regarding the possible purchase of a new boat. As I stated in the past, we do appreciate the fact that the 48 is your third Ocean and loyal family members are important to us. Wayne, we do appreciate your loyalty and we try to do what is necessary to satisfy our Ocean Family Owners. If you feel purchasing a new vessel is the direction you want to pursue, please contact Oyster Harbors regarding the possible purchase of a new boat.

Please feel free to contact me if you have any questions or concerns regarding the remaining warranty work noted above.

Sincerely,

Scott Krawiec
Customer Service Manager
Ocean Yachts Inc.

Cc: Peter Maryott, Oyster Harbors Marine